Ann DeWitt SULLIVAN, Plaintiff,

v.

DELPHI AUTOMOTIVE SYSTEMS CORPORATION, Defendant.

Case No. C–3–00–378.

United States District Court,
S.D. Ohio,
Western Division.

April 30, 2002.

Randolph Freking, Cincinnati, OH, for plaintiff.

Lori Clary, Columbus, OH, Robert Walker, Cleveland, OH, for defendant.

## DECISION AND SUSTAINING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 15); JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF; TERMINATION ENTRY

RICE, Chief Judge.

The Plaintiff was formerly employed by the Defendant. In 1983, she graduated from Wright State University with a B.S. in finance and accounting.[1] Plaintiff was hired by the Defendant's predecessor, General Motors Corporation ("General Motors"), to work at its Delco Products facility. She began working as a fourth-level, management or supervisory employee.[2] In June, 1984, the Plaintiff was promoted to a fifth-level position in General Motors' Cost Accounting Department. In 1988, she was promoted to a sixth level position. In December, 1990, the Plaintiff became a sixth level scheduler/expediter in General Motors' Products, Control and Logistics ("PC & L") Shock Manufacturing Department. In May, 1996, the Plaintiff was promoted to a seventh level position, as a general supervisor in the PC & L Shipping Department.

In 1996, the Plaintiff began to work at Defendant's Home Avenue Plant. In early 1999, she began a romantic relationship with Michael Sullivan ("Sullivan"), an eighth-level supervisor at the Home Avenue Plant to whom she had reported. In order to avoid the appearance of favoritism, Plaintiff was transferred to Defendant's Vandalia Plant. Subsequently, the Plaintiff and Sullivan married.

---

1. Since this litigation comes before the Court on the Defendant's Motion for Summary Judgment, the Court sets forth its precipitating events in the manner most favorable to the Plaintiff, giving that party the benefit of every reasonable inference to be drawn therefrom.

2. Throughout her career with Defendant and its predecessor, General Motors, the Plaintiff was employed in a management or supervisory capacity. Therefore, her employment was never governed by the terms of a collective bargaining agreement.

In 1998 and 1999, Plaintiff sought to be promoted to an eighth level supervisor position on two occasions. One promotion would have been to a materials manager position, while the other would have been to a PC & L manager position. In both instances, the Defendant selected a male to fill the open position. With respect to one of the positions for which Plaintiff applied, the PC & L manager position, the Defendant selected Jeff Leake who was 37 years of age. The Plaintiff was 47 at the time.

In May, 2000, Sullivan took a position at a manufacturing facility of the Defendant, located in Lockport, New York. Consequently, Plaintiff transferred to one of Defendant's facilities in that city. In April, 2001, Sullivan left his employment with the Defendant and returned to the Dayton area. To be with her husband, Plaintiff resigned her position with the Defendant and also moved to the Dayton area.

In her Complaint (Doc. # 1), the Plaintiff has set forth nine claims for relief, to wit: 1) a claim of sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; 2) a claim of sex discrimination in violation of Chapter 4112 of the Ohio Revised Code ("Chapter 4112"); 3) a claim of age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq.; 4) a claim of age discrimination in violation of Chapter 4112; 5) a claim that the Defendant acted tortiously by violating public policy; 6) a claim of breach of contract; 7) a claim of promissory estoppel; 8) a claim that the Defendant violated the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), by paying her less than a similarly situated male employee; and 9) a claim that the Defendant has violated Ohio's Equal Pay Act, § 4111.17 of the Ohio Revised Code.

This case is now before the Court on the Defendant's Motion for Summary Judgment (Doc. # 15). As a means of analysis, the Court will initially set forth the standards which are applicable to all motions for summary judgment, following which it turn to the parties' arguments in support of and in opposition to the instant request for summary judgment.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. 2548. *See also Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987)). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)). Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v.*

*Bravo Pitino Restaurant, Ltd.,* 61 F.3d 1241, 1245 (6th Cir.1995). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Michigan Protection and Advocacy Service, Inc. v. Babin,* 18 F.3d 337, 341 (6th Cir.1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. 2548. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson,* 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted). Of course, in determining

whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the factfinder. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.,* 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

The Defendant seeks summary judgment on all nine claims set forth in the Plaintiff's Complaint. As a means of analysis, the Court will discuss the parties' arguments relating to the Plaintiff's claims

in the order in which those claims appear in her Complaint, discussing similar claims together.

## I. Sex Discrimination Claims

With the First and Second Claims for Relief in her Complaint, the Plaintiff sets forth claims of sex discrimination in violation of Title VII and Chapter 4112 of the Ohio Revised Code. In particular, the Plaintiff contends that the Defendant discriminated against her on the basis of her sex by not promoting her to an eighth-level position.[3]

In *Hollins v. Atlantic Company, Inc.*, 188 F.3d 652 (6th Cir.1999), the Sixth Circuit reviewed the familiar analytical framework, established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), which is applicable in employment discrimination lawsuits:[4]

**3.** The Defendant, apparently interpreting Plaintiff's Complaint as claiming that she was discriminated against on the basis of her sex by being transferred from the Home Avenue Plant to the Vandalia Plant, has moved for summary judgment on that aspect of Plaintiff's sex discrimination claims. Since the Plaintiff has not responded to that argument, the Court assumes that she has not based these claims on the theory that she was discriminated against as a result of her transfer. Moreover, even if the Plaintiff had responded to the Defendant's arguments, the Court would conclude that it is entitled to summary judgment. It is axiomatic that a plaintiff must show, as part of her *prima facie* case, that she suffered an adverse employment action and, further, that a transfer does not constitute such an adverse action, where the plaintiff does not suffer a reduction in salary or other loss of benefits. *See e.g., Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698 (7th Cir.2001); *Kocsis v. Multi–Care Management, Inc.*, 97 F.3d 876 (6th Cir.1996). The Plaintiff does not contend that her transfer to the Vandalia Plant caused her salary to be reduced or that, as a result, she otherwise suffered a loss of benefits.

In her Memorandum in Opposition to the Defendant's Motion for Summary Judgment, the Plaintiff states that she applied for a position with the Defendant in March, 2001, and that she was not hired for that position. Doc. # 19 at 5. As a consequence, the Plaintiff states therein that she was constructively discharged as of April 27, 2001. *Id.* Since this lawsuit was filed on August 1, 2000, the Plaintiff would be required to bring claims predicated on events occurring in March and April, 2001, by way of a supplemental complaint. *See* Fed.R.Civ.P. 15(d). The Plaintiff has not, however, sought leave to file such a pleading.

Consequently, claims arising out of the Plaintiff's failure to be hired in 2001, are not part of this lawsuit.

**4.** In *Laderach v. U–Haul of Northwestern Ohio*, 207 F.3d 825, 828 (6th Cir.2000), the Sixth Circuit reiterated that, since the standards for establishing discrimination under Title VII and Chapter 4112 are the same, "we need not analyze [plaintiff's] discrimination claims separately under state and federal law." *Id.* at 828 (citing *Little Forest Medical Center of Akron v. Ohio Civil Rights Comm.*, 61 Ohio St.3d 607, 609–10, 575 N.E.2d 1164 (1991)). *See also, Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 421 N.E.2d 128 (1981) (holding that the standards used to analyze claims under Title VII are applicable to claims under Chapter 4112); *Scott v. University of Toledo*, 137 Ohio App.3d 538, 739 N.E.2d 351 (2000) (same); *Olive v. Columbia/HCA Healthcare Corp.*, 2000 WL 263261 (Ohio App. 8 Dist. March 9, 2000) (same). Ohio Courts have also applied federal standards to resolve claims of age discrimination; *See Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 582, 664 N.E.2d 1272, 1276 (1996), *Kohmescher v. Kroger Co.*, 61 Ohio St.3d 501, 575 N.E.2d 439 (1991) (syllabus), and under Ohio's Equal Pay Act, Ohio Revised Code § 4111.17. *See Snyder v. City of Lima*, 2000 WL 1695121 (Ohio App.2000); *Stone v. Greater Cleveland Regional Transit Authority*, 92 Ohio App.3d 373, 383, 635 N.E.2d 1281, 1287 (1993). *See also, Creech v. Ohio Cas. Ins. Co.*, 944 F.Supp. 1347, 1353 (S.D.Ohio, 1996) (holding that federal standards are applicable to claim under § 4111.17). Accordingly, this Court will apply the federal standards when ruling upon the Defendant's request for summary judg-

In a Title VII case, in the absence of direct evidence, the burden-shifting approach for inferential proof of discrimination set forth in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies. *Burns v. City of Columbus Dep't of Pub. Safety*, 91 F.3d 836, 843 (6th Cir.1996). This same analysis applies to [plaintiff's] claims under 42 U.S.C. § 1981, [Title VII], and Ohio Rev.Code § 4112.99. *See, e. g., Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989); *Little Forest Med. Ctr. of Akron v. Ohio Civil Rights Comm'n*, 61 Ohio St.3d 607, 575 N.E.2d 1164, 1167 (1991). Because [plaintiff] alleges racial discrimination under each provision for acts arising out of the same facts and circumstances, we will consider these claims together. *Cf. Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir.1992).

> We have described the familiar *McDonnell Douglas* analysis as follows:
>
> (1) the plaintiff must establish a *prima facie* case of racial discrimination; (2) the employer must articulate some legitimate, nondiscriminatory reason for its actions; and (3) the plaintiff must prove that the stated reason was in fact pretextual.
>
> *Harrison v. Metropolitan Gov't of Nashville and Davidson County*, 80 F.3d 1107, 1115 (6th Cir.1996).

*Id.* at 658. In *Allen v. Michigan Department of Corrections*, 165 F.3d 405 (6th Cir.1999), the Sixth Circuit explained the elements of a *prima facie* case of discrimination, when the plaintiff alleges that he was denied a promotion, in violation of Title VII:

> For purposes of Title VII, a failure to promote is an adverse employment action. *See Hale v. Cuyahoga County Welfare Dep't*, 891 F.2d 604, 606 (6th Cir.1989). In order to establish a *prima facie* claim of racial discrimination based on a failure to promote, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir.1996); *Brown v. Tennessee*, 693 F.2d 600, 603 (6th Cir.1982).

*Id.* at 410.

■ Herein, the evidence raises genuine issues of material fact as to the elements of Plaintiff's *prima facie* case of sex discrimination. As a female, she was a member of the protected class. In 1998 and 1999, she applied for promotions to eighth-level positions. In each instance, the Plaintiff was qualified for the promotion, given that the Defendant interviewed her. Rather than the Plaintiff being selected, the Defendant chose a male applicant with similar qualifications. Indeed, the Defendant does not question that the evidence raises genuine issues of material fact about Plaintiff's *prima facie* case of sex discrimination, based upon Defendant's failure to promote her to an eighth-level position.

■ However, Defendant argues that it has met its burden of articulating non-discriminatory reasons for not promoting Plaintiff to either eighth-level position and, further, that the evidence does not raise a genuine issue of material fact as to pretext. This Court agrees. The Defendant has submitted evidence that Plaintiff was

ment on Plaintiff's state law, discrimination claims.

not promoted to the eighth-level PC & L position, because it wanted someone who was experienced in lean manufacturing. With respect to the eighth-level materials manager position, the evidence is that John Kravac was selected, because he had more experience at lean implementation, more material movement experience and better training skills. Thus, the question becomes whether the evidence raises a genuine issue of material fact with respect to pretext as to either or both positions.

In *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078 (6th Cir.1994), the Sixth Circuit discussed the methods by which a plaintiff can establish pretext:

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is "required to show by a preponderance of the evidence either (1) that the proffered reasons had no basis *in fact,* (2) that the proffered reasons did not *actually* motivate his discharge, or (3) that they were *insufficient* to motivate discharge." *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 513 (7th Cir.1993) (emphasis added and quotation marks omitted). The first type of showing is easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, i.e., that they are "factually false." *Baxter Healthcare,* 13 F.3d at 1123–24. The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff. These two types of rebuttals are direct attacks on the credibility of the employer's proffered motivation for firing plaintiff and, if shown, provide an evidentiary basis for what the Supreme Court has termed "a suspicion of mendacity." *St. Mary's Honor Center* v.

*Hicks,* 509 U.S. 502, [511], 113 S.Ct. 2742, 2749. As *Hicks* teaches, such a showing permits, but does not require, the factfinder to infer illegal discrimination from the plaintiff's *prima facie* case.

> The second showing, however, is of an entirely different ilk. There, the plaintiff admits the factual basis underlying the employer's proffered explanation and further admits that such conduct could motivate dismissal. The plaintiff's attack on the credibility of the proffered explanation is, instead, an indirect one. In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was more likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it "more likely than not" that the employer's explanation is a pretext, or coverup.

*Id.* at 1084 (emphasis in the original). *Accord Kline v. Tennessee Valley Authority,* 128 F.3d 337, 346–47 (6th Cir.1997); *Kocsis v. Multi–Care Management, Inc.,* 97 F.3d 876, 883 (6th Cir.1996).

Herein, the Plaintiff has not identified under which prong of *Manzer* she is proceeding. Rather, she merely claims that the Defendant's stated reason for not promoting her is not worthy of belief. The Court believes that the Plaintiff is relying upon the second prong of *Manzer.* Plaintiff has not relied upon the first prong of *Manzer,* with respect to either position, by arguing that the Defendant's reasons for not promoting her are factually false. In addition, she has not argued that the evidence raises a genuine issue of material fact concerning pretext under the third prong of *Manzer.* Therefore, the Plaintiff essentially argues that the overwhelming weight of circumstantial evidence of dis-

crimination is sufficient to raise a genuine issue of material fact concerning pretext.

Initially, Plaintiff argues that certain comments made by Thomas Klusmeyer ("Klusmeyer"), plant manager for the Home Avenue Plant, demonstrate that the Defendant's stated reasons for refusing to promote her were a pretext for discrimination. According to Sullivan's deposition testimony, Klusmeyer said that he did not believe that a small or little female could be a good manager. Sullivan Dep. at 46–47. That statement does not cause the Court to conclude that there is a genuine issue of material fact concerning pretext. The Sixth Circuit has repeatedly held that isolated and ambiguous comments are irrelevant and inadmissible in employment discrimination lawsuits. *Phelps v. Yale Security, Inc.*, 986 F.2d 1020 (6th Cir.1993) (holding that comments by factory manager that plaintiff was too old to be a plant manager's secretary were isolated and ambiguous and did not support a claim of age discrimination); *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309 (6th Cir.1989) (holding that isolated comment by plaintiff's supervisor that he needed younger blood did not support a finding of age discrimination). Klusmeyer's alleged comment was isolated. Moreover, it is ambiguous, given that Klusmeyer is alleged to have said that a *small* or *little* female could not be a good manager. There is no indication that he said that a female could not be a good manager. In other words, the alleged statement provides evidence that Klusmeyer had a discriminatory animus toward small or little females, as opposed to all females. The ambiguity is further demonstrated by the fact that the parties have not indicated whether the Plaintiff is within the category Klusmeyer

is alleged to have disfavored. In addition, Sullivan testified that the remark was made in connection with the decision not to replace an eighth-level manager who had recently retired. Therefore, it was not related to either promotion at issue in this litigation.[5]

Plaintiff also relies upon her husband's deposition testimony to the effect that she was the stronger candidate for the two positions. The Court concludes that such a conclusion fails to raise a genuine issue of material fact. Sullivan was not involved in the decision as to who would be promoted to either of the positions. The Sixth Circuit has held that the opinions expressed by co-workers who are not directly involved in the decision-making process do not raise a genuine issue of material fact concerning pretext. *Haley v. General Electric Co.*, 2001 WL 92135, 3 Fed.Appx. 240 (6th Cir.2001).

The Plaintiff also argues that the evidence raises a genuine issue of material fact concerning pretext, because the Defendant has a "glass ceiling" at eighth-level positions. In support of that argument, the Plaintiff relies upon the deposition testimony of Tina Williams ("Williams"), a human resources administrator for the Defendant. According to Plaintiff, Williams testified that there was not an affirmative action goal for women at eighth-level positions, as a result of which absence there was only one woman occupying such a position. The Plaintiff has misrepresented Williams' deposition testimony. Williams testified that affirmative action goals were given to her by the corporation, rather than setting them herself. She also testified that she could not remember whether a goal for the eighth-level had been estab-

---

**5.** Indeed, although Klusmeyer was the decision-maker with respect to the eighth-level PC & L position, he was not involved in the decision as to who would be promoted to the

eighth-level materials manager position. Therefore, his alleged statement is totally unrelated to the failure to promote Plaintiff to that latter position.

lished for 1999. Williams Dep. at 29, 33. Moreover, the Sixth Circuit has condemned the use of untested "statistics" such as those upon which the Plaintiff relies. *See Allen v. Diebold, Inc.,* 33 F.3d 674 (6th Cir.1994).

The Plaintiff also argues that she can show pretext, because the Defendant violated its internal policies by failing to promote someone from within. Neither of the applicants chosen for the two positions in question was promoted from within; however, the Plaintiff overstates the Defendant's internal policies. The Defendant's employee handbook, unlike that of its predecessor General Motors, did not represent that employees would be promoted from within. In addition, the managers who made the promotions testified that Defendant looks to both external and internal candidates to fill open positions.

In sum, the Court concludes that the evidence does not raise a genuine issue of material fact concerning pretext. Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 15), as it relates to the First and Second Claims for Relief in her Complaint, which allege that she has been the victim of sex discrimination when she was not promoted to the two eighth-level positions for which she applied.

## II. Age Discrimination Claims

With the Third and Fourth Claims for Relief in her Complaint, the Plaintiff sets forth claims of age discrimination, in violation of the ADEA and Chapter 4112. In particular, the Plaintiff contends that she was discriminated against on the basis of her age, when, in 1999, Leake, rather than her, was promoted to the eighth-level PC & L position. The Defendant has moved for summary judgment on these claims, arguing that it has met its burden of articulating a non-discriminatory reason for selecting Leake, instead of her, and, further,

that the evidence does not raise a genuine issue of material fact as to whether that decision was a pretext for discrimination. In response, the Plaintiff argues that the evidence raises a genuine issue of material fact as to pretext for age discrimination for the same reasons that it raises a genuine issue of material fact on the question of sex discrimination. Since the Court has rejected Plaintiff's argument that the same evidence raises a genuine issue of material fact concerning sex discrimination, it concludes that such evidence does not raise a genuine issue of material fact on the question of whether Defendant's stated reasons for refusing to promote Plaintiff are a pretext for age discrimination.

## III. Violation of Public Policy

 In the Fifth Claim for Relief in her Complaint, the Plaintiff alleges that the Defendant violated the public policy of Ohio, by failing to promote her because of her sex and age. Doc. # 1 at ¶¶ 57–62. The Defendant seeks summary judgment on this claim, arguing that Ohio courts have not recognized the tort of failing to promote someone in violation public policy. The Sixth Circuit recognized as much in *Evans v. Toys R Us,* 2000 WL 761803, 221 F.3d 1334 (6th Cir.2000), *affirming,* 32 F.Supp.2d 974 (N.D.Ohio 1999). Rather than arguing that *Evans* was wrongly decided or that this Court should decline to follow it, the Plaintiff argues that she has demonstrated that genuine issues of material fact exist on her claim that her *termination* was in violation of public policy. *See* Doc. # 19 at 38–40. Putting aside for a moment the fact that the Plaintiff failed to include in her Complaint a claim that Defendant violated public policy by terminating her employment, the unrefuted evidence, the Plaintiff's own deposition testimony, reveals that she voluntarily resigned her employment with the Defendant. Plaintiff's Dep. at 10. The Plaintiff has

not supplied any evidence which would contradict her deposition testimony and raise a genuine issue of material fact as to whether she was discharged, rather than voluntarily resigning.

In accordance with *Evans*, and in the absence of evidence that the Plaintiff was discharged, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 15), as it relates to Plaintiff's Fifth Claim for Relief, in which she sets forth a claim predicated upon the alleged violation of public policy.

## IV. Breach of Contract

In her Sixth Claim for Relief, the Plaintiff sets forth a claim of breach of contract. She adds flesh to that claim with her Memorandum in Opposition to Defendant's Motion for Summary Judgment. In particular, the Plaintiff contends that the Defendant violated the provision in its employee handbook which indicated that the Defendant would extend employment opportunities to qualified employees and applicants, regardless of age, race, sex, religion and national origin.[6] *See* Doc. # 19 at 34. According to the Plaintiff, that provision constituted a contract between the parties and the Defendant breached it by not promoting her to one of the eighth-level positions, because that decision was based upon her age and sex. The Defendant argues, *inter alia*, that it is entitled to summary judgment on this claim, because its employee handbook did not constitute a binding contract. Regardless of whether the employee handbook constituted a contract, the Defendant is entitled to summary judgment on this claim, since, as set forth above, the evidence fails to raise a

genuine issue of material fact on the question of whether the Defendant discriminated against the Plaintiff on the basis of her age or sex, by not promoting her. Consequently, the evidence fails to raise a genuine issue of material fact on the issue of whether the Defendant violated the equal employment opportunity provision in the employee handbook by so failing to promote her. *See Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 44 (1994) (noting that, among other elements of a breach of contract claim, a plaintiff must establish that the defendant breached the contract).

Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 15), as it relates to Plaintiff's Sixth Claim for Relief, which is based upon the theory that the Defendant breached the contract between the parties.

## V. Promissory Estoppel

■ In the Seventh Claim for Relief in her Complaint, the Plaintiff alleges that she is entitled to recover under a theory of promissory estoppel. In her Memorandum in Opposition to Defendant's Motion for Summary Judgment, she elaborates upon this claim, arguing that she relied upon the promise contained in the Defendant's employee handbook that its employees would be paid at the market rate. Doc. # 19 at 36. However, with its motion, the Defendant points out that there is no evidence that she relied to her detriment on a promise that Defendant would pay its employees at such a rate. The Plaintiff has not responded to the Defendant's argument, with which this Court agrees. Both the Sixth Circuit, applying

---

6. The Plaintiff also argues that the Defendant breached a provision in the employee handbook issued by its predecessor, General Motors Corporation, to fill openings by transfer or promotion from within whenever possible. The flaw in this claim of breach of contract is that the Plaintiff has failed to submit evidence that the employee handbook issued by General Motors formed a contract between the Plaintiff and this Defendant, the successor to General Motors.

the law of Ohio, and Ohio courts have held that a plaintiff asserting a claim of promissory estoppel against her former employer must demonstrate that she detrimentally relied upon her former employer's promise, by citing specific examples of the alternative positions she rejected as a result of that reliance. *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1041 (6th Cir.1992); *Corradi v. Soclof,* 1995 WL 322311 (Ohio App. 8 Dist. May 25, 1995); *McIntosh v. Roadway Express, Inc.*, 94 Ohio App.3d 195, 640 N.E.2d 570 (1994). The Plaintiff has not presented any evidence, showing the alternative positions she turned down, as a result of the Defendant's promise to pay its employees at market rates. Rather, she merely cites her deposition testimony, explaining that she relied on that promise. *See* Doc. # 19 at 35 (citing Plaintiff's Dep. at 184). If this Court were to conclude that the Plaintiff's deposition testimony creates a genuine issue of material fact as to whether she has shown that she detrimentally relied upon the promises in Defendant's employment handbook, it would be required to ignore the above-cited decisions in which courts have held that the Plaintiff can only demonstrate detrimental reliance by identifying the alternative positions which she has declined as a result of that reliance.

Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 15), as it relates to Plaintiff's Seventh Claim for Relief, which is based on promissory estoppel.

## VI. *Equal Pay Claims*

■ With the Eighth and Ninth Claims for Relief in her Complaint, the Plaintiff alleges that the Defendant has violated the EPA and § 4111.17 of the Ohio Revised Code, by paying her less than a similarly situated male employee, Tom McNulty ("McNulty"). In *Kovacevich v. Kent State University*, 224 F.3d 806 (6th Cir.2000), the Sixth Circuit discussed the manner in which a claim under the EPA is to be assessed:

The EPA provides that no covered employer shall discriminate "between employees on the basis of sex ... for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." *Timmer [v. Michigan Dep't of Commerce,* 104 F.3d 833 (6th Cir.1997) ] (quoting 29 U.S.C. § 206(d)(1)). To establish a *prima facie* case for an EPA claim, a plaintiff must show that an employer paid different wages to an employee of the opposite sex for substantially equal work. *See id.* " 'Equal work' does not require that the jobs be identical, but only that there exist 'substantial equality of skill, effort, responsibility and working conditions.' " *See Buntin [v. Breathitt County Bd. of Educ.,* 134 F.3d 796, 801 (6th Cir.1998) ] (quoting *Odomes v. Nucare, Inc.,* 653 F.2d 246, 250 (6th Cir.1981)). To determine if work is substantially equal, a court must make "an overall comparison of the work, not its individual segments." *Id.* Once the plaintiff establishes a *prima facie* case, the defendant must prove by a preponderance of the evidence that the wage differential is justified under one of the four affirmative defenses set forth in the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex. *See* 29 U.S.C. § 206(d)(1); *Corning Glass Works [v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974) ]; *Buntin,* 134 F.3d at 799; *Timmer,* 104 F.3d at 843. The burden for proving that a factor other than sex is the basis for a wage differential is a heavy one. *See Buntin,* 134 F.3d at 799.

*Id.* at 826–27. It bears emphasis that, since the burden of proving one of the four affirmative defenses is on the defendant, to survive a motion for summary judgment, an EPA plaintiff need not set forth evidence which is sufficient to raise a genuine issue of material fact that the employer's proffered reason for the wage differential is pretextual. *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir. 1998).

Herein, the Defendant argues that the evidence fails to raise a genuine issue of material fact with respect to a *prima facie* case under the EPA and that the evidence establishes its affirmative defense that the difference in the pay between the Plaintiff and McNulty was based upon a seniority system. For reasons which follow, the Court concludes that the evidence fails to raise a genuine issue of material fact on the Defendant's defense that disparity in pay between Plaintiff and McNulty resulted from a seniority system. Accordingly, the Court concludes that the Defendant is entitled to summary judgment on these claims, without addressing the question of whether the Plaintiff has made out a *prima facie* case.

Both Plaintiff and McNulty were employed by the Defendant as seventh-level supervisors. The evidence before the Court is that McNulty was paid more than the Plaintiff.[7] The Defendant argues that the disparity in wages flows from the fact that McNulty had been a seventh-level supervisor for much longer than the Plaintiff. This Court agrees. McNulty had been employed by the Defendant and General Motors in a seventh-level position for 13 years, as opposed to the Plaintiff's employment in such a position for six years.

In addition, McNulty had employed by Defendant and General Motors for 33 years, as compared to 18 years for the Plaintiff. The Defendant compensates its salaried employees, such as the Plaintiff, according to their responsibilities. Each salaried employee is assigned to a level, ranging from second to eighth, depending upon those responsibilities. Salaried employees are eligible for annual raises. Given the fact that McNulty had been employed in a seventh-level position for more than twice the number of years as the Plaintiff, he had more years in which to have his salary increased.

Accordingly, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 15), as it relates to Plaintiff's Eighth and Ninth Claims for Relief.

Based upon the foregoing, the Court sustains the Defendant's Motion for Summary Judgment (Doc. # 15) in its entirety. Judgment is to be entered in favor of the Defendant and against the Plaintiff.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

7. In 1996, Plaintiff was paid $15,300 less than McNulty. Over the next four years, Plaintiff's salary level was from $13,620 to $16,260 less than McNulty's.