Ann THOMAS, Pro se, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 07–212 C.

United States Court of Federal Claims.

April 1, 2009.

Ann Thomas, Atlanta, GA, pro se.

Carrie A. Dunsmore, United States Department of Justice, with whom were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, Steven J. Gillingham, Assistant Director, Washington, D.C., for defendant.[1]

## OPINION

BUSH, Judge.

This case is before the court on cross-motions for summary judgment under Rule 56 of the Rules of the United States Court of Federal Claims (RCFC). These motions have been thoroughly briefed, and oral argument was neither requested by the parties nor deemed necessary by the court.[2] Plaintiff has ably and clearly articulated arguments proposing summary judgment in her favor and resisting summary judgment for

---

1. At different times, Ms. Dunsmore and Ms. Michelle R. Milberg have been lead counsel for defendant; they both have submitted briefs which are now before the court.

2. Before the court are Plaintiff's Motion for Summary Judgment (Pl.'s Mot.), filed April 11, 2008; Plaintiff's Proposed Findings of Uncontroverted Fact (Pl.'s Facts), filed April 11, 2008; Defendant's Cross–Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment (Def.'s Mot.), filed April 30, 2008; Defendant's Response to Plaintiff's Proposed Findings of Uncontroverted Fact (Def.'s Resp. to Facts), filed April 30, 2008; Defendant's Statement of Undisputed Fact (Def.'s Facts), filed April 30, 2008; Plaintiff's Response to Defendant's Motion for Summary Judgment (Pl.'s Reply), filed June 2, 2008; Plaintiff's Response to Defendant's Statement of Undisputed Fact (Pl.'s Resp. to Facts), filed June 6, 2008; Defendant's Reply Brief in Support of its Motion for Summary Judgment (Def.'s Reply), filed June 27, 2008; Plaintiff's Motion for Leave to File Sur–Reply, filed July 16, 2008, and Plaintiff's Motion for Leave to Add One Paragraph to the Sur–Reply Brief and Seven Pages to the Appendix, filed August 7, 2008 (together, Pl.'s Sur–Reply); and Defendant's Sur–Reply to Plaintiff's Sur–Reply to Defendant's Cross–Motion for Summary Judgment (Def.'s Sur–Reply), filed December 23, 2008.

the government. Nonetheless, for the reasons set forth below, the court grants defendant's motion and must dismiss plaintiff's claims.

## BACKGROUND

Ms. Ann Thomas works as an Unemployment Insurance Program Specialist (UI Specialist) in Atlanta, Georgia, for the Region III office of the United States Department of Labor (DOL), Employment and Training Administration (ETA), in the Division of Workforce Security (DWS). Pl.'s Facts ¶¶ 1, 7; Def.'s Facts ¶ 6; Pl.'s Resp. to Facts ¶ 6. The complaint alleges that Ms. Thomas is paid less than three male UI Specialists whose responsibilities "requir[e] equal skill, effort and responsibility, and which are performed under similar working conditions." [3] Compl. ¶¶ 6–9; see Pl.'s Facts ¶ 2. Plaintiff argues that the United States has violated the Equal Pay Act of 1963, 29 U.S.C. § 206 (2006), by paying her at a lower pay grade than three male "comparators," when these four UI Specialists all perform equal work for ETA regional offices. Compl. at 3. While Ms. Thomas is a GS–12 UI Specialist, her three male comparators are all GS–13 UI Specialists and therefore receive higher salaries.[4] Ms. Thomas appears to have risen to the rank of GS–12 UI Specialist by March 24, 2003, see Pl.'s Facts ¶¶ 8–9; Pl.'s Mot. at 4, and has been employed as a GS–12 UI Specialist for approximately six years.

Mr. James Laham works at the Region I ETA office in Boston, Massachusetts, as a GS–13 UI Specialist. Def.'s Facts ¶ 31. The ETA Division of Workforce Security in Boston has, in addition to Mr. Laham, two other male GS–13 employees, one female GS–13 employee, two male GS–12 employees and one female GS–12 employee.[5] Pl.'s Mot. Ex. A (Def.'s Resp. to Pl.'s Interrog. 4). Mr.

Laham has been a GS–13 UI Specialist for approximately twenty years. Def.'s Mot. App. at 91.

Mr. Raymond Koch works at the Region V ETA office in Chicago, Illinois, as a GS–13 UI Specialist. Def.'s Facts ¶ 18. The ETA Division of Workforce Security in Chicago has, in addition to Mr. Koch, three other male GS–13 employees, three female GS–13 employees, no male GS–12 employees and no female GS–12 employees. Pl.'s Mot. Ex. A (Def.'s Resp. to Pl.'s Interrog. 4). Mr. Koch has been a GS–13 UI Specialist for approximately seven years. Def.'s Mot.App. at 25.

Mr. Randolph Fadler works at the Region III ETA office in Atlanta, Georgia, as a GS–13 UI Specialist. Def.'s Facts ¶ 55. The ETA Division of Workforce Security in Atlanta has, in addition to Mr. Fadler, no other male GS–13 employees, one female GS–13 employee, one male GS–12 employee and one female GS–12 employee. Pl.'s Mot. Ex. A (Def.'s Resp. to Pl.'s Interrog. 4). Mr. Fadler has been a GS–13 UI Specialist for approximately seven years, and was a GS–13 employee of the Department of Labor in Washington, D.C. for approximately seventeen years before taking a job in the Region III office in Atlanta. Def.'s Mot.App. at 29.

Ms. Thomas has made at least four attempts to upgrade her GS–12 pay level, before filing her claim in this court. In 2004, plaintiff asked for a "desk audit" of her position by the Department of Labor, because she felt her job merited GS–13 pay. Def.'s Facts ¶ 78. The desk audit indicated that her GS–12 position was correctly classified as a GS–12. *Id.* Ms. Thomas then requested a second desk audit, from the United States Office of Personnel Management (OPM). *Id.* ¶ 79. OPM also determined that plaintiff's position was correctly classified as a GS–12.

---

**3.** Although plaintiff's complaint compares Ms. Thomas to twelve male UI Specialists working in various regional ETA offices, in moving for and resisting summary judgment, Ms. Thomas has only alleged facts concerning three specific male UI Specialists. *See* Pl.'s Facts ¶ 2; Def.'s Mot. at 31; Def.'s Reply at 7–8. Thus, the court must decide in this opinion whether, as a matter of law, the disparity in the pay received by Ms. Thomas, and that received by Mr. James Laham, Mr. Raymond Koch, and Mr. Randolph Fadler, is permissible. *See* Pl.'s Facts ¶ 2 ("Defendant pays

three men, James Laham, Ray Koch, and Randolph Fadler at a higher pay grade GS–13.").

**4.** These federal employees receive salaries based on the GS (General Schedule) grade level of their positions.

**5.** These statistics refer only to employees with three years tenure in the Division of Workforce Security, as of late 2007.

*Id.* Thereafter, Ms. Thomas twice competed for an open GS–13 UI Specialist position in the Region III ETA office in Atlanta, in 2006 and again in 2007. *Id.* ¶ 90. In each instance, a woman other than Ms. Thomas was hired. *Id.* Ms. Thomas filed her Equal Pay Act claim in this court on March 30, 2007.[6]

## DISCUSSION

### I. *Pro Se* Litigants

■ The court acknowledges that Ms. Thomas is proceeding *pro se*, and is "not expected to frame issues with the precision of a common law pleading." *Roche v. U.S. Postal Serv.*, 828 F.2d 1555, 1558 (Fed.Cir. 1987). *Pro se* plaintiffs are entitled to a liberal construction of their pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"). Accordingly, the court has examined the complaint and briefs thoroughly and has attempted to discern all of plaintiff's legal arguments.

### II. Standard of Review for RCFC 56 Cross–Motions

■ The moving party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." RCFC 56(c). Cross-motions for summary judgment "are not an admission that no material facts remain at issue." *Massey v. Del Labs., Inc.*, 118 F.3d 1568, 1573 (Fed.Cir.1997) (citing *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir.1978)). The parties may focus on different legal principles and allege as undisputed a different set of facts. *Id.* "Each party carries the burden on its own motion to show entitlement to judgment as a matter of law after demonstrating the absence of any genuine disputes over material facts." *Id.*

■■ "[A] party seeking summary judgment always bears the initial responsibility of informing the ... court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting former version of Fed. R.Civ.P. 56(c)). A genuine issue of material fact is one that could change the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A summary judgment "motion may, and should, be granted so long as whatever is before the ... court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

■ Any evidence presented by the non-movant is to be believed and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)). The burden on Ms. Thomas, as a party resisting summary judgment, has been concisely described by the United States Supreme Court in the following statement:

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote and citations

---

6. Jurisdiction over plaintiff's claim is undisputed. *See Harbuck v. United States*, 378 F.3d 1324, 1330 (Fed.Cir.2004) (noting that the plaintiff in that case "could ... have filed her Equal Pay Act case in the Court of Federal Claims"); *Cooke v.*

*United States*, 85 Fed.Cl. 325, 341 (2008) ("The Equal Pay Act constitutes ... a money-mandating statute over which this Court has jurisdiction.") (citation omitted).

omitted). "[S]ummary judgment is a salutary method of disposition designed to secure the just, speedy and inexpensive determination of every action." *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed.Cir.1987) (internal quotations and citations omitted).

### III. Statutory Scheme

■ The Equal Pay Act (the Act) in relevant part provides:

> No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1). The Act "was established to protect against pay discrimination based on gender." *Yant v. United States*, 85 Fed.Cl. 264, 271 (2009). Under the Act, a plaintiff bears the burden of establishing a *prima facie* case that shows that

> he or she performed work that is similar to that performed by employees of the opposite sex involving equal skill, effort, and responsibility; that the work was performed under similar working conditions; and that the employer paid different wages to employees of opposite sexes for such work.

*Lissak v. United States*, 49 Fed.Cl. 281, 284 (2001) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)).

■ "Once a prima facie case has been established, the burden of proof shifts to the defendant to show that the wage disparities fall under one of the four exceptions to the Act". *Id.* (citing *Corning Glass*, 417 U.S. at 196, 94 S.Ct. 2223). The "exceptions" to the Act are also known as affirmative defenses. *See* 29 U.S.C. § 206(d)(1) (noting that seniority, merit, production-based pay, and "any other factor other than sex," are the four affirmative defenses available under the Act); *Corning Glass*, 417 U.S. at 196–97, 94 S.Ct. 2223 (describing the four permissible reasons for pay disparity between genders as both "exceptions" and "a matter of affirmative defense"). The affirmative defense pertinent to this case is the federal government's merit pay system, sometimes referred to as the General Schedule (or GS) system, in which a GS–13 employee will generally receive a higher salary than a GS–12 employee. The United States Court of Appeals for the Federal Circuit has not discussed the relative burdens on the parties in Equal Pay Act cases when a court is weighing cross-motions for summary judgment. It is clear, however, from non-binding precedent from this court and other courts, as well as binding precedent governing RCFC 56, that some Equal Pay Act cases may be resolved on summary judgment, as will be discussed *infra*.

### IV. Genuine Issues of Material Fact as to a *Prima Facie* Violation of the Equal Pay Act

It is undisputed that Ms. Thomas, Mr. Laham, Mr. Koch and Mr. Fadler are all UI Specialists in regional ETA offices, and that Mr. Laham, Mr. Koch and Mr. Fadler are paid more than Ms. Thomas, their female colleague. Both parties assert that they are entitled to summary judgment on the issue of whether Ms. Thomas has met the burden of establishing a *prima facie* violation of the Equal Pay Act. *See* Pl.'s Mot. at 3 ("Defendant has not shown in its Answer or during discovery attempts any differences in responsibility performed by plaintiff and her higher paid comparators."); Def.'s Mot. at 22 ("Ms. Thomas has failed to establish that her job was substantially equal to the jobs of her alleged comparators, and therefore cannot

establish her *prima facie* case."). Neither party is entitled to summary judgment on this issue, however, because the comparison of the work duties of Ms. Thomas and her three male colleagues is pervaded by genuine issues of material fact. As a threshold issue, however, the court turns to defendant's argument that two of the male comparators chosen by Ms. Thomas do not work within the same "establishment," as required by 29 U.S.C. § 206(d)(1), and are thus not appropriate comparators for the purposes of the Act.[7] Def.'s Mot. at 24–25.

### A. Whether the Six Regional ETA Division of Workforce Security Offices Constitute One Establishment

▇ Mr. Laham and Mr. Koch work, respectively, in ETA's Boston and Chicago regional offices. According to information provided by defendant to plaintiff, each of the ETA Division of Workforce Security regional offices has a handful of long-term employees (who have worked at least three years in DWS): Atlanta-four employees; Boston-seven employees; Chicago-seven employees; Dallas-nine employees; Philadelphia-two employees; and San Francisco-eight employees. Pl.'s Mot. Ex. A (Def.'s Resp. to Pl.'s Interrog. 4). Despite the fact that the regional DWS offices together constitute a small subunit of DOL, one which has a national mission and programmatic focus, and which operates under the federal government's GS merit-based pay system and centralized oversight of personnel matters, defendant insists that for the purposes of the Equal Pay Act, each regional ETA office must be considered to be a separate establishment. Def.'s Mot. at 24–25. For this proposition, defendant relies principally on a regulation, 29 C.F.R. § 1620.9 (2008), which generally defines an "establishment" to be "a distinct physical place of business rather than ... an entire business or 'enterprise' which may include several separate places of business," § 1620.9(a). The regulation, however, also states that "unusual circumstances may call for two or more distinct physical portions of a business enterprise being treated as a single establishment." *Id.* § 1620.9(b).

The court has before it several allegations of fact presented by plaintiff which, given all justifiable inferences, create a genuine issue of material fact as to whether the six regional ETA Division of Workforce Security offices are one establishment. Plaintiff has alleged that many personnel decisions are made by a centralized ETA office, not in the regional ETA offices. Pl.'s Reply at 7 (stating that a central ETA office determines "when [the regional office] can hire, determines which Regional Offices will be able to hire, the number of persons that can be hired, and at what grade level [new employees] can be hired"). Ms. Thomas also has provided documentation of work assignments which transcend the geographic boundaries of the regional offices' respective territories. Pl.'s Sur–Reply at 2. An "unusual" establishment, *i.e.*, one which can be considered to be a single establishment despite multiple, geographically-dispersed offices, is described by an example given in the relevant regulation cited by defendant:

> For example, a central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions.

29 C.F.R. § 1620.9(b). The facts alleged by Ms. Thomas may describe an unusual, multi-

---

**7.** This court's predecessor court has opined that a dispute over the "establishment" from which comparators have been chosen will not prevent a plaintiff from establishing a *prima facie* violation of the Act. *See Molden v. United States*, 11 Cl.Ct. 604, 611 n. 4 (1987) (suggesting "that the definition of the word establishment, as that term is used in the Act, is not material to the making of a prima facie case ... [and] that plaintiffs, in order to establish a prima facie case, need merely show that an employer is paying different wages to employees of the opposite sex for the perform- ance of similar work under similar working conditions") (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *E.E.O.C. v. Maricopa County Cmty. Coll. Dist.*, 736 F.2d 510, 513 (9th Cir.1984)). Whatever the merits of this view, the court need not decide that question. Here, there are other genuine disputes of material fact which deny both plaintiff and defendant summary judgment on the issue of whether Ms. Thomas has established her *prima facie* case.

location establishment, when the court accords her factual allegations all justifiable inferences, as it must for a party resisting summary judgment.

The court has found no caselaw that would categorically exclude the six regional ETA Division of Workforce Security offices from being considered a single "establishment" under the Equal Pay Act. *See, e.g., Grumbine v. United States,* 586 F.Supp. 1144, 1148 (D.D.C.1984) (stating that "at least for purposes of public employment, the geographic reach of the term 'establishment' is not automatically determined by geography, as the government would have it, but depends upon the degree to which the particular governmental entity has centralized its personnel administration") (footnote omitted). Some courts have found the interpretation of the term "establishment," in the context of a particular Equal Pay Act case, to depend on disputed, material facts, and have refused to rule on this issue at the summary judgment phase of litigation. *See, e.g., Lenihan v. Boeing Co.,* 994 F.Supp. 776, 800 (S.D.Tex. 1998) (denying the employer's summary judgment motion on an Equal Pay Act claim, in part because the parties disputed whether two plants, one in Houston, Texas, and the other in Huntsville, Alabama, constituted a single establishment); *Brownlee v. Gay & Taylor, Inc.,* 642 F.Supp. 347, 352 (D.Kan. 1986) (denying the employer's motion for summary judgment on a Equal Pay Act claim which involved disputes of fact, including a dispute as to whether multiple company offices within a certain region of the country constituted a single establishment). Because disputed issues of material fact remain as to the proper establishment from which Ms. Thomas may choose comparators, the court denies defendant summary judgment on this issue.

**B. Whether Ms. Thomas and Her Comparators Performed Equal Work**

■ Plaintiff, representing herself *pro se,* has assembled a massive quantity of documentation and allegations of fact describing her position and those of her comparators. *See* Pl.'s Mot. at 2–3 & App. Exs. A–E; Pl.'s Reply at 2–7 & App.; Pl.'s Sur–Reply at 3–5 & App. Defendant has similarly presented copious documentation and allegations of fact concerning the positions of Ms. Thomas and her comparators. Even without reviewing this body of conflicting information in detail, the court notes that genuine issues of fact are discernable. Defendant disagrees with plaintiff's description of the primary duties of Mr. Laham and Mr. Koch. Def.'s Resp. to Facts ¶¶ 4–5. Plaintiff disagrees with defendant's description of her work duties, Pl.'s Resp. to Facts ¶¶ 7–17, and disagrees with defendant's allegation that she requires more supervision than Mr. Fadler or Mr. Laham, Pl.'s Reply at 10. Ms. Thomas suggests that "[t]he documents attached to this Sur–Reply, Plaintiff's Affidavit, and Plaintiff's performance evaluations are proof that the Plaintiff's job duties are the same as Mr. Raymond [Koch], Mr. James Laham, and Mr. Randolph Fadler." Pl.'s Sur–Reply at 5. Giving all justifiable inferences to plaintiff's allegations of fact, the court finds that genuine issues of material fact prevent summary judgment for either party on the issue of whether Ms. Thomas and any one of her male comparators do equal work.[8] *See, e.g., Hauschild v. United States,* 53 Fed.Cl. 134, 138–39 (2002) (denying summary judgment on a *prima facie* case under the Equal Pay Act "[b]ecause numerous genuine issues of material fact are present as to whether plaintiff and [a comparator] performed the same or substantially the same work on jobs requiring equal skill, effort, and responsibility, and under similar working conditions").

---

**8.** Defendant asserts that the desk audits of plaintiff's position, confirming that the GS–12 rating of her job was correct, rebut plaintiff's *prima facie* case. Def.'s Reply at 6–7. The court agrees that the desk audits support defendant's view of the facts. These audits do not, however, remove all genuine issues of material fact as to whether Ms. Thomas and her comparators were doing equal work, as defined by the Equal Pay

Act. *See, e.g., Gunther v. County of Washington,* 623 F.2d 1303, 1309 (9th Cir.1979) (stating that when a plaintiff wishes to show that jobs are substantially equal, "actual job performance and content[,] not job titles, classifications or descriptions[, are] determinative") (citations omitted), *af'd on other grounds,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981).

## V. No Genuine Issues of Material Fact as to Defendant's Affirmative Defense of a Merit System of Pay

 Even if Ms. Thomas had established a *prima facie* case under the Act, defendant has raised an affirmative defense to her claim:

> Assuming that this Court were to find that Ms. Thomas has established her *prima facie* case, this Court should nonetheless grant our motion for summary judgment because any pay disparity between Ms. Thomas and her alleged comparators was not based upon gender. Specifically, any pay disparity that might exist falls within an exception to the [Act], a merit system.

Def.'s Mot. at 31–32 (citing 29 U.S.C. § 206(d)(1)). To prevent defendant from prevailing on its RCFC 56 motion, Ms. Thomas "must do more than simply show that there is some metaphysical doubt as to the material facts" related to this affirmative defense of a merit pay system. *See Matsushita Electric,* 475 U.S. at 586, 106 S.Ct. 1348 (citations omitted). Plaintiff "must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Id.* at 587, 106 S.Ct. 1348 (citations omitted). Although neither the Federal Circuit nor the Supreme Court has commented on the burden borne by a defendant raising an affirmative defense to an Equal Pay Act claim as it moves for summary judgment, it is clear that this burden is a heavy one. *See, e.g., Stanziale v. Jargowsky,* 200 F.3d 101, 108 (3rd Cir.2000) (stating that "where, as here, employers seek summary judgment as to the Equal Pay Act claim, they must produce sufficient evidence such that no rational jury could conclude but that the proffered reasons actually motivated the wage disparity of which the plaintiff complains"); *Irby v. Bittick,* 44 F.3d 949, 954 (11th Cir.1995) (noting that the employer's burden for proving its affirmative defense is a heavy one) (citation omitted); *Mansfield v. United States,* 71 Fed.Cl. 687, 693 (2006) (noting that "[t]he employer's burden to establish an affirmative defense under the [Act] is a heavy one") (citations omitted); *Hauschild,* 53 Fed.Cl. at 139 (stating that "[t]he burden of proving that a factor other than sex underlies the wage differential is a heavy one") (citation omitted).

 Here, according to the facts either presented by or unchallenged by Ms. Thomas, she became eligible for promotion to a GS–13 position, under the General Schedule merit system, on March 24, 2004. Pl.'s Facts ¶ 9. Her comparators had obtained GS–13 positions years before. *See* Def.'s Mot.App. at 25, 29, 91. Ms. Thomas has not alleged that she competed for any of the GS–13 positions held by her comparators. *Id.* at 21, 37. Ms. Thomas has not alleged that her comparators received their GS–13 positions by any means other than through the government's merit system. Two GS–13 vacancies in the Atlanta regional office, for which Ms. Thomas was eligible, went to other women. Def.'s Facts ¶ 90. The regional offices of the ETA Division of Workforce Security had thirteen male GS–13 employees and thirteen female GS–13 employees at the time Ms. Thomas filed her complaint in this court, according to one statistic in the record. Pl.'s Mot.App. Ex. A (Def.'s Resp. to Pl.'s Interrog. 4). Two desk audits found that plaintiff's UI Specialist position was correctly classified as a GS–12. Def.'s Facts ¶¶ 78–79. This record can only be read to show that the government's highly structured and regulated merit system, not gender, explains the pay disparity between Ms. Thomas and her comparators.

Plaintiff has not cast any doubt upon the facts before the court. Plaintiff alleges that ETA has recently hired or promoted twenty-six of its employees into GS–13 positions, but this bare allegation does not in any way show that the government's merit system has not accounted for the pay disparity between Ms. Thomas and her comparators. Pl.'s Mot. at 7–8. Ms. Thomas also states that "[d]efendant's merit system is merely a promotion and internal placement plan designed to insure a systematic means of selection for position vacancies based on merit. It does not insure that employees performing jobs requiring equal skill, effort and responsibility receive the same rate of pay." Pl.'s Reply at 10. This argument, even if true, in no way implies that the government's merit system does not explain the pay differential between

Ms. Thomas and her comparators. Finally, although plaintiff has alleged that "ETA hires and transfers inexperienced individuals to positions above and at journey (*i.e.*, the GS–12 UI Specialist) level," this allegation was made in reference to two female ETA employees, and does not address defendant's contention that the government's merit system is the reason for the pay disparity between Ms. Thomas and her comparators.[9] Pl.'s Resp. to Facts ¶¶ 85–87, 91 (citing Pl.'s Mot.App. Ex. A (Def.'s Resp. to Interrogs. 20–21)). Upon this record, giving all justifiable inferences to Ms. Thomas, a rational fact-finder would necessarily conclude that the government's merit system, not gender, produced the pay disparity that plaintiff challenges in this court.

■ Thus, although defendant bore a heavy burden with respect to its affirmative defense, the pay disparity between Ms. Thomas and her comparators can only be explained by the government's merit system. There is no need to proceed to trial on a plaintiff's Equal Pay Act claim, when the employer's affirmative defense has been established and there are no genuine issues of material fact preventing summary judgment in its favor. *See, e.g., Timmer v. Mich. Dep't of Commerce*, 104 F.3d 833, 844 (6th Cir.1997) (granting summary judgment to state agencies which had brought forth "substantial evidence that the wage disparity was caused by an inadvertent misapplication of the job classification system"); *Thomas v. Cmty. Coll. of Phila.*, 553 F.Supp.2d 511, 516 (E.D.Pa.2008) ("Defendant has carried its heavy burden of establishing that the pay differential was based on a factor other than sex, and summary judgment is appropriate."); *Day v. Krystal Co.*, 471 F.Supp.2d 874, 894 (E.D.Tenn.2007) (granting summary judgment on employer's affirmative defense because the plaintiff failed to "come forward with evidence demonstrating a triable issue of fact") (citation omitted); *E.E.O.C. v. TXI*

*Operations, L.P.*, 394 F.Supp.2d 868, 881 (N.D.Tex.2005) (granting summary judgment to employer on affirmative defense to an Equal Pay Act claim); *Birks v. Jack Ingram Motors, Inc.*, 346 F.Supp.2d 1216, 1222 (M.D.Ala.2004) (granting summary judgment to employer for a "greater experience" affirmative defense explaining a pay disparity); *Sullivan v. Delphi Auto. Sys. Corp.*, 198 F.Supp.2d 952, 963 (S.D.Ohio 2002) (granting summary judgment on a seniority system affirmative defense, "without addressing the question of whether the Plaintiff has made out a *prima facie* case"); *Lissak*, 49 Fed.Cl. at 287 (granting summary judgment to the federal government because its salary policies showed "no evidence of pretext or discrimination"). There are no specific allegations of fact before the court which undermine the affirmative defense established by the government. The record clearly shows that a merit system produced the pay disparity between Ms. Thomas and her comparators.

## CONCLUSION

Plaintiff's motion for summary judgment is denied because genuine issues of material fact remain as to her *prima facie* case of an Equal Pay Act violation. Because there are no genuine issues of material fact as to the government's affirmative defense, and because the government is entitled to judgment as a matter of law, defendant's motion for summary judgment is granted.

Accordingly, it is hereby **ORDERED** that

(1) Plaintiff's Motion for Summary Judgment, filed April 11, 2008, is **DENIED;**

(2) Defendant's Cross–Motion for Summary Judgment, filed April 30, 2008, is **GRANTED;**

(3) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant,

---

9. There are two responses to interrogatories, numbered 20 and 21, related to the prior work experience of two female ETA employees. Pl.'s Mot.App. Ex. A (Def.'s Resp. to Interrogs. 20–21). There is also a response to an additional interrogatory numbered 21 (which, because it is followed in plaintiff's appendix by interrogatory 23, must be interrogatory 22), which does not discuss the prior work experience of individual ETA employees. *See id.* (Def.'s Resp. to Interrog. 2[2]). Plaintiff's references to these responses to interrogatories fail to allege any specific facts which contradict the merit system defense to her claim under the Act.

**DISMISSING** the complaint, with prejudice; and

 (4) Each party shall bear its own costs.