Brenda BUNTIN, Plaintiff–
Appellant/Cross–
Appellee,

v.

BREATHITT COUNTY BOARD OF
EDUCATION, et al., Defendants–
Appellees/Cross–Appellants.

Nos. 96–5907, 96–5994.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 21, 1997.

Decided Jan. 21, 1998.

Robert E. Wier (argued and briefed), Philpot, Ransdell, Roach & Wier, Lexington, KY, for Plaintiff–Appellant/Cross–Appellee.

Lawrence E. Forgy (briefed), Maryellen B. Mynear, Frost & Jacobs, Lexington, KY, David Skidmore (argued and briefed), Frost & Jacobs, Cincinnati, OH, for Defendants–Appellees/Cross–Appellants.

Before: MERRITT, MOORE, and BRIGHT,* Circuit Judges.

## OPINION

MOORE, Circuit Judge.

The plaintiff, Brenda Buntin, was formerly employed by the Breathitt County Board of Education ("the Board") as the Director of Pupil Personnel. Buntin claims that she is the victim of employment discrimination, alleging that the Board chose to pay her less than her male predecessor because of her gender in violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq.; 42 U.S.C. § 1983;[1] Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681–86; and the Kentucky anti-discrimination laws, KY. REV.STAT. ANN. § 344.040 (Banks–Baldwin 1997). At the close of Buntin's case-in-chief, the district court granted the Board's motion for judgment as a matter of law under FED. R. CIV. P. 50(a), concluding that Buntin failed to present evidence sufficient to meet her burden of proof under the applicable employment discrimination laws. Because we conclude that there is a genuine issue of material fact on which reasonable jurors could differ regarding the reason for the wage differential between Buntin and her predecessor, we reverse.

Buntin also claims that the Board violated KY.REV.STAT. ANN. § 159.140 (Banks–Baldwin 1997), which governs the duties of the Directors of Pupil Personnel, when it assigned her duties not explicitly enumerated in the statute. Relying on the plain language of the statute, the district court agreed and granted

---

* The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. Buntin's § 1983 claim is based on her assertion that the wage differential between Buntin and her predecessor violates the Fourteenth Amendment's Equal Protection Clause.

Buntin's motion for partial summary judgment. The district court also enjoined the Board from assigning to Buntin additional duties beyond those listed in the statute. Because Buntin no longer is employed by the Board, there no longer remains an actual case or controversy between the Board and Buntin regarding her future duties. We therefore vacate the district court's injunction for mootness.

## I. FACTS AND PROCEDURAL HISTORY

In response to a management audit which identified above-average school administrator salaries as a cause of Breathitt County's financial problems, the Board adopted a new salary policy in 1990. Whereas previously the compensation paid to school administrators was capped at 260 "extended employment days,"[2] the new policy decreased the cap to 240 extended employment days (hereinafter "240–day policy"). The new policy also eliminated extra service pay. In order to soften the blow of the new policy, administrators employed by the Central Office received a 10% bonus, or "index." According to the Board, the overall salary level of all school administrators, with one exception, was reduced under the 240–day policy.[3] In a further effort to reduce costs, the Board in December 1991 allegedly granted the Superintendent, Hargus Rogers, the authority to cap the extended employment days at 220 days with no 10% index for all persons newly hired into administrative positions (hereinafter "220–day policy"). In September of 1992, the Board hired Buntin as the Director of Pupil Personnel. She had been certified as a teacher in Kentucky since 1976 and had served as the Director of Pupil Personnel in another school system for fourteen years. Her salary was capped at 220 extended employment days, and she did not receive any bonus.

Buntin claims she is the victim of employment discrimination, alleging that the Board chose to pay her less than her male predecessor because of her gender.[4] On February 29, 1996, the district court denied the Board's motion for summary judgment as to Buntin's gender discrimination claims. Trial began on May 20, 1996. At the close of Buntin's case-in-chief, the district court granted the Board's motion for judgment as a matter of law under FED.R.CIV.P. 50(a), and dismissed Buntin's gender discrimination claims. With respect to her claim under the Equal Pay Act, the district court concluded that although Buntin established that she was paid less than her predecessor for performing substantially the same work, the Board met its burden of demonstrating that the wage differential was based on a factor other than sex. As for Buntin's remaining gender discrimination claims, the district court concluded that Buntin failed to establish a prima face case of discrimination because she could not show that a similarly-situated male received more favorable treatment. Moreover, the court found that Buntin did not show pretext.

## II. WAGE DISCRIMINATION CLAIMS

■ The court of appeals reviews a district court's decision under FED.R.CIV.P. 50(a) de novo. *See Monday v. Oullette,* 118 F.3d 1099, 1101 (6th Cir.1997). Judgment as a matter of law should be granted only where a reasonable juror, relying on the evidence put forth at trial, could not find for the plaintiff on each of the elements of her claim. *See Smelser v. Norfolk Southern Ry. Co.,* 105 F.3d 299, 306 (6th Cir.), *cert. denied,* —— U.S. ——, 118 S.Ct. 67, 139 L.Ed.2d 29 (1997). The court should not weigh the evidence or judge the credibility of witnesses,

---

**2.** School employees in Breathitt County receive compensation based on a salary schedule tied to the number of days worked each school year. The base school year is 185 days. Administrators are assigned "extended days" by the Board in excess of the base year, and are compensated proportionately for each extended day.

**3.** Subsequent to adoption of the 240–day policy, the salary of Buntin's predecessor, R.D. Gab-

bard, was reduced from 260 days with extra service pay to 240 days with a 10% index.

**4.** Although Buntin also alleged that the Board discriminated against her on the basis of her gender and her political affiliation with respect to other aspects of her employment conditions, she does not challenge on appeal the district court's dismissal of these claims.

and must make all reasonable inferences in favor of the nonmoving party. *See Monday*, 118 F.3d at 1101–02. Since the heart of Buntin's lawsuit is that she was paid less than her predecessor because of her gender, we turn first to Buntin's claim under the EPA.

## A. Equal Pay Act

■ The EPA prohibits employers from paying an employee at a rate less than that paid to employees of the opposite sex for equal work. *See* 29 U.S.C. § 206(d)(1). Thus, to establish a prima facie case of wage discrimination, the EPA plaintiff must show that "an employer pays different wages to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974) (quoting 29 U.S.C. § 206(d)(1)). "Equal work" does not require that the jobs be identical, but only that there exist "substantial equality of skill, effort, responsibility and working conditions." *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir.1981). Whether the work of two employees is substantially equal "must be resolved by an overall comparison of the work, not its individual segments." *Id.* The plaintiff may meet her prima facie burden by demonstrating a wage differential between herself and her predecessor. *See Gandy v. Sullivan County, Tenn.*, 24 F.3d 861 (6th Cir.1994) (holding that there was "substantial similarity" between plaintiff and her male predecessor's job).

■ An overall comparison of the work performed by Buntin and her predecessor, R.G. Gabbard, raises a material issue as to whether Buntin performed substantially equal work for less pay than Gabbard. Buntin testified that she was required to perform all of the duties previously assigned to her predecessor, as well as some additional responsibilities. Buntin's pay, however, was capped at 220 extended employment days whereas Gabbard's pay was set at 240 extended employment days plus a 10% bonus.[5] Buntin therefore meets her prima facie burden.

■ Once the plaintiff establishes a prima facie case, the defendant must "prove" that the wage differential is justified under one of the four affirmative defenses set forth under § 206(d)(1) of the Equal Pay Act: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any other factor other than sex. *See Corning Glass Works*, 417 U.S. at 196, 94 S.Ct. at 2229. Because these nongender-based explanations for the wage differential are affirmative defenses, the defendant bears the burden of proof.[6] *See id.* at 197, 94 S.Ct. at 2229; *see also Equal Employment Opportunity Comm'n v. Romeo Community Schs.*, 976 F.2d 985, 988 (6th Cir.1992). Thus, to survive the defendant's motion for judgment as a matter of law, the EPA plaintiff need not set forth evidence from which a jury could infer that the employer's proffered reason for the wage differential is pretextual.[7] As the

---

**5.** Assuming the Board did in fact adopt the 220-day policy, Gabbard's employment prior to and Buntin's employment subsequent to implementation of this policy does not render Buntin and Gabbard's work unequal for purposes of the EPA. The Act explicitly identifies the existence of a seniority system as an affirmative defense, *see* 29 U.S.C. § 206(d)(1)(i), thereby implying that the initial date of employment is not significant at the prima facie stage.

**6.** In contrast, under the framework applicable to Title VII cases, the plaintiff always bears the burden of proof. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993). In Title VII cases, once the plaintiff satisfies her prima facie burden, the defendant need only assert a legitimate

non-discriminatory reason for the different treatment afforded the plaintiff as compared to her similarly situated male co-workers. *See id.* at 507–08, 113 S.Ct. at 2747–48. Once the defendant meets this burden of production, the plaintiff must present evidence sufficient to support an inference of pretext in order to survive a defendant's motion for judgment as a matter of law. *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

**7.** The Eleventh Circuit has held that "[w]hen the defendant overcomes the burden, the plaintiff must rebut the explanation by showing with affirmative evidence that it is pretextual or offered as a post-event justification for a gender-based differential." *Irby v. Bittick*, 44 F.3d 949, 954 (11th

party who bears the burden of persuasion, the defendant who makes a motion under Rule 50(a) must demonstrate that there is no genuine issue as to whether the difference in pay is due to a factor other than sex. *See id.* at 989. Thus, the district court's granting of the Board's motion for judgment as a matter of law was proper "only if the record shows that they established the defense so clearly that no rational jury could have found to the contrary." *Equal Employment Opportunity Comm'n v. State of Delaware Dep't of Health and Soc. Servs.,* 865 F.2d 1408, 1414 (3d Cir.1989).

■ We believe the evidence presented at trial raises a genuine issue as to whether the Board's explanation for the wage differential between Buntin and her predecessor is pretextual. As proof of the existence of its alleged 220–day policy, the Board presented evidence demonstrating that the salaries of all new male administrators in the Central Office hired after 1992 were also capped at 220 extended employment days. Both Tim Johnson and Dallas Montgomery were hired at 220 extended employment days with no index as the Technology Coordinator and the Director of Special Education respectively. The Board also hired J.C. Raleigh (a male) as Director of Food Service at 185 days with no index. Like Buntin, none of the three had previously held administrative positions. Buntin, however, proposes an alternative explanation for the fact that Johnson, Montgomery, and Raleigh were all paid at or below 220 extended days—none of their predecessors were paid at or above 220 days.

At trial, Superintendent Hargus Rogers testified that Johnson's position was a new position, J.A. at 256 (Tr. at 112), and Board Chairman Kelly Noble, Jr. testified that Montgomery's predecessor worked only 10 and a quarter months, or 210 days. J.A. at 321 (Tr. at 177). Neither party directed either the district court's or this court's attention to evidence showing whether the

Board paid Raleigh's predecessor for 240 days. Consequently, both Johnson and Montgomery, and perhaps Raleigh, are not similar to Buntin in all relevant respects. A reasonable jury could infer that the Board chose to pay these men for 220 extended employment days or less because their jobs were not traditional 240–day positions, but chose to cap Buntin's salary at 220 days due to her gender. In other words, a reasonable jury could believe Buntin's assertion that the Board's 220–day policy is a fiction or pretext. Additional support for this inference comes from the fact that the Board failed to memorialize the 220–day policy in writing, as required by KY.REV.STAT. ANN. § 160.340 (Banks–Baldwin 1997), whereas the 240–day policy appears in the May 21, 1990 minutes of the Breathitt County Board of Education meeting. Because we believe there exists a genuine issue of material fact regarding the reason for the wage differential between Buntin and her predecessor, we hold that the district court improperly granted the Board's motion for judgment as a matter of law.

### B. Title VII, § 1983, Title IX, and Kentucky's Anti–Discrimination Laws

■ Evaluation of Buntin's discrimination claims under Title VII, 42 U.S.C. § 1983, Title IX, and KY.REV.STAT. ANN. § 344.040 (Banks–Baldwin 1997) all follow the Title VII framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Gafford v. General Elec. Co.,* 997 F.2d 150, 166 (6th Cir.1993) (order of proof for claim brought under Kentucky's anti-discrimination laws follows federal law); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 896–97 (1st Cir.1988) (case law developed under Title VII applies to both § 1983 (the Equal Protection Clause) and Title IX claims).

Cir.1995). We disagree with this characterization of the plaintiff's and defendant's respective burdens under the EPA. The Eleventh Circuit improperly shifts the burden of persuasion to the plaintiff on the affirmative defense issues. In an EPA case, the defendant *always* bears the burden of proving that its proffered reason is the true

basis for the pay differential. The EPA plaintiff bears the burden of *producing* evidence of pretext solely where a reasonable jury viewing the defendant's evidence could find only for the defendant; the plaintiff, however, never bears the burden of *persuasion* regarding the affirmative defenses.

This circuit has previously held that a finding of liability under the Equal Pay Act requires a similar finding of liability under Title VII where both claims present the same conduct and evidence. *See Korte v. Diemer,* 909 F.2d 954, 959 (6th Cir.1990) (holding that "[c]onduct that a jury finds to be 'based on' sex, and not motivated by nondiscriminatory reasons, cannot later be found by a district court to lack an intent to discriminate on the basis of sex"). Applying this principle to the present case, we must conclude that where the plaintiff defeats the defendant's motion for judgment as a matter of law with respect to her EPA claim by raising a genuine issue as to the defendant's reason for the differential wage, she also defeats their motion for judgment as a matter of law brought against her parallel Title VII claim. We therefore hold that the district court erred in granting the Board's motion for judgment as a matter of law with respect to Buntin's claims under Title VII, § 1983, Title IX of the Education Amendments of 1972, and Kentucky's anti-discrimination laws.

## III. DUTIES OF THE DIRECTOR OF PUPIL PERSONNEL

In addition to her wage discrimination claims, Buntin also claims that the Board violated KY.REV.STAT. ANN. § 159.140 (Banks–Baldwin 1997), delineating the duties of the Directors of Pupil Personnel, by assigning her job responsibilities not explicitly enumerated in the statute. Buntin sought injunctive relief enjoining the Board from assigning to Buntin additional duties beyond those listed in the statute. Relying on the plain language of the statute, the district court granted Buntin's request for injunctive relief. At oral arguments before this court, Buntin's attorney informed us that Buntin no longer works for the Breathitt County Board of Education. In light of this recent development, both parties contend that Buntin's claim under KY.REV.STAT. ANN. § 159.140 (Banks–Baldwin 1997) is now moot, and that the district court's injunction therefore should be vacated. We agree.

Because Article III of the Constitution limits federal courts' jurisdiction to actual cases and controversies, we do not have jurisdiction where "the parties lack a legally cognizable interest in the outcome." *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396, 100 S.Ct. 1202, 1208, 63 L.Ed.2d 479 (1980) (quotation omitted); *see also McPherson v. Michigan High Sch. Athletic Ass'n,* 119 F.3d 453, 458 (6th Cir.1997) (en banc). As Buntin is no longer employed by the Board, the injunction enjoining the Board from assigning her duties not prescribed by KY.REV.STAT. ANN. § 159.140 (Banks–Baldwin 1997) no longer affects her legal interests. We therefore conclude that Buntin's request for injunctive relief is moot. *Cf. Ahmed v. University of Toledo,* 822 F.2d 26, 27 (6th Cir.1987) (holding moot the plaintiffs' challenge to a university's requirement that foreign students carry health insurance where named plaintiffs were no longer students at the university).

## IV. CONCLUSION

Because we conclude that Buntin raised a genuine issue as to whether the Board's explanation for its decision to pay her at a lower level than her predecessor was pretextual, we hold that the district court improperly dismissed Buntin's employment discrimination claims. As Buntin is no longer employed by the Board, we also hold that her claim for injunctive relief under KY.REV. STAT. ANN. § 159.140 (Banks–Baldwin 1997) is moot since she no longer has a stake in the outcome. Accordingly, we **REVERSE** the district court's granting of the defendant's motion for judgment as a matter of law with respect to Buntin's employment discrimination claims, and **VACATE** the district court's injunction enjoining the Board from assigning to Buntin additional duties not listed in KY.REV.STAT. ANN. § 159.140 (Banks–Baldwin 1997). We remand for further proceedings consistent with this opinion.