Sally **HARRISON–PEPPER**, Plaintiff,

v.

**MIAMI UNIVERSITY**, Defendants.

No. C–1–01–746.

United States District Court, S.D. Ohio, Western Division.

Jan. 27, 2003.

Marc D. Mezibov, Christian A. Jenkins, Cincinnati, OH, for plaintiff.

James E. Michael, Jr., Oxford, OH, for defendant.

*Memorandum and Order*

BECKWITH, District Judge.

Plaintiff is a professor in the School of Interdisciplinary Studies at Miami University. She suffers from lupus and has enjoyed, by agreement with the University, a reduced advising responsibility, reduced scholarly writing expectations, and some scheduling accommodations. She complains, however, that her salary has been negatively affected by those accommodations and/or by animus based upon her

handicap status or her sex. She asserts claims under Title VII, 42 U.S.C. § 2000e–2, *et seq.;* the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.,* 794; and the Equal Pay Act, 29 U.S.C. § 206. This matter is before the Court upon Defendant's motion for summary judgment (Doc. 13).

A. *Background*

Defendant hired Plaintiff as a tenure track professor in 1988. At that time, Plaintiff's lupus was not diagnosed. At approximately the same time, the University hired Hays Cummins, a male, as a tenure track professor in the same department. Plaintiff and Mr. Cummins were of approximately the same age and level of experience at the time of their hiring. They were hired to perform somewhat different roles, as Mr. Cummins was recruited from a national search to carry out the mission of launching the University's Center for Science Discovery. His responsibilities were to be academic and administrative. His starting salary of $32,000 per year exceeded Plaintiff's by $2,000.

In 1990, Plaintiff's lupus was diagnosed. She did not immediately seek accommodations for her condition from the University. At approximately the same time, Plaintiff learned of the disparity between her salary and Mr. Cummins'. In 1991, Defendant granted Plaintiff tenure and promoted her to an associate professorship and also began making periodic adjustments to Plaintiff's salary in order to equalize it, over time, with Mr. Cummins'.

In late 1992, Plaintiff sought certain accommodations for her medical conditions and the resulting fatigue, light sensitivity, and other symptoms. Defendant agreed to make scheduling accommodations, to reduce Plaintiff's advising responsibilities, to make adjustments to lighting in buildings in which Plaintiff taught, and to expect a smaller output of scholarly research and writing from Plaintiff.

Plaintiff believed, erroneously, that her salary had been made equal to Mr. Cummins' by 1995, the year in which she was promoted to full professor. Beginning in the second semester of the 1995–96 academic year, Plaintiff took a series of personal, faculty improvement, and medical leaves. Those leaves had her away from the Miami University campus for all but one of the seven semesters from January 1996 through the 1998–99 academic year. By the end of that period, Plaintiff's annual salary was $13,314 less than Hays Cummins'. During much of the period, Plaintiff received smaller salary increases than did male colleagues. The University evaluated her scholarship as good but not exceptional. She sought a salary adjustment in late 1999 with the encouragement of her dean. The University Provost denied her request; although, she subsequently received a large salary increase for the 2000–01 academic year. Plaintiff is the lowest paid full professor in her department. The second lowest paid is her only female colleague.

Plaintiff asserts that Defendant has engaged in sex discrimination in the terms of her employment by paying her a lower salary than it pays male colleagues. She argues that her sex must be the basis for the disparity. On that basis, she asserts that Defendant has been in violation of Title VII and the Equal Pay Act from as far back as the date of her hiring.

Plaintiff also contends that Defendant's conduct violates the Rehabilitation Act of 1973. She bases her Rehabilitation Act claim on the disparity in her pay as compared to non-handicapped colleagues. She argues that Defendant has unfairly considered the accommodations it has made for her handicap as detracting from her performance.

Plaintiff's final claim is that Defendant has retaliated against her by giving her smaller salary increases than she has deserved because she complained to the University's Provost in January 2000 about perceived gender bias in her compensation, appealed the Provost's decision denying her a salary adjustment to the faculty rights and responsibilities committee in May 2000, and filed a charge of discrimination with the Equal Employment Opportunity Commission in July 2000. Plaintiff notes that her two salary increases following those protected activities have been smaller than those given to most of her male colleagues and argues that the disparity is a result of retaliation by the University. Defendant moves for summary judgment with respect to all of Plaintiff's claims.

### B. The Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(emphasis in original).

The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.*

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 472, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962). "[T]he issue of material fact required by Rule 56(c) ... to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." *First National Bank v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.), *cert. dismissed*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party. *Id.* at 323, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 250, 106 S.Ct. 2505.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. 2548. Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence. *Id.; Anderson,* 477 U.S. at 250, 106 S.Ct. 2505. Rule 56(e) requires the non-moving party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." *Id.*

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Id.* Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits." Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

### C. *Analysis*

While Plaintiff has asserted two different forms of discrimination against Defendant, her claims are clearly intertwined. She argues, for example, that her salary has been suppressed because of her sex and because of unfair consideration of the effects of accommodations for her handicap. All of Plaintiff's claims are based upon salary disparities, and proof of those disparities and the context in which they exist is essential to all of her claims. Accordingly, before considering whether Plaintiff has identified evidence in support of the essential elements of each of her claims, the Court examines closely the evidence relating to salaries in the School of Interdisciplinary Studies at Miami University from 1988 to the present.

The evidence of record includes documents reflecting annual salary increases for the professors in Plaintiff's department. The documents include little to distinguish the professors aside from their names and the salary figures. They do not disclose, for example, years of service, performance evaluations, leave taken during the year, subjects or courses taught, or other information that might permit meaningful comparisons among them. Plaintiff draws the Court's attention to three facts disclosed in the documents.

First, Plaintiff observes the disparities between her salary at various times and that of Hays Cummins. Plaintiff observes that, although the dean of her college had promised in 1991 that Plaintiff's salary and Mr. Cummins' would be equalized by 1995, they were never closer than $1,300. She also observes that the gap between their salaries has increased annually since 1995, when they were at their closest. The only evidence identified by Plaintiff that relates in any way to other elements of Plaintiff's employment as compared to Mr. Cummins' is her own statement in an affidavit that her work with the Western Performance Group since 1989 is similar to Mr. Cummins' direction of the Center for Science

Discovery and the testimony of former dean Curtis Ellison that, while Plaintiff and Mr. Cummins were doing different work in different fields, the quality of the performance of both was very high. *See* Plaintiff's Affidavit, ¶ 5, Ellison Deposition, p. 117. Other evidence in the record indicates that Mr. Cummins has taken only two semesters of leave since joining the Miami University faculty in 1989. *See* Woodworth Affidavit, ¶ 8.

Plaintiff also asks the Court to take note of the fact that as of the present time, she and the other female professor in her department are the two lowest paid full professors in their department. Moreover, she urges the Court to recognize that professor Bill Green received larger salary increments on a percentage basis while on leave than did Plaintiff. The Court does take note of each of those facts.

### 1. The Equal Pay Act Claim

■ In order to establish a *prima facie* case under the Equal Pay Act, Plaintiff must show that Defendant paid different wages to male employees "for equal work on jobs the performance of which require[d] equal skill, effort, and responsibility, and which [were] performed under similar working conditions." *Equal Employment Opportunity Commission v. Romeo Community Schools*, 976 F.2d 985, 987 (6th Cir.1992)(quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)). " 'Equal work' does not require that the jobs be identical, but only that there exist 'substantial equality of skill, effort, responsibility and working conditions.' " *Buntin v. Breathitt County Bd. of Educ.*, 134 F.3d 796, 799 (6th Cir.1998)(quoting *Odomes v. Nucare, Inc.*, 653 F.2d 246, 250 (6th Cir. 1981)). "To determine if work is substantially equal, a court must make 'an overall comparison of the work, not its individual segments.' " *Kovacevich v. Kent State University*, 224 F.3d 806, 826 (6th Cir.2000)(quoting *Buntin*, 134 F.3d at 799).

■ Once the plaintiff in an Equal Pay Act case has established a *prima facie* case, the burden shifts to the defendant to prove one of four affirmative defenses, which "authorize an employer to differentiate in pay between sexes." *Bence v. Detroit Health Corp.*, 712 F.2d 1024, 1029 (6th Cir.1983) (citation omitted), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1984). Those affirmative defenses include (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; and (4) a differential based on any other factor other than sex. *See id.*

■ Plaintiff has introduced substantial evidence of differences in the amounts paid to members of the faculty of the School of Interdisciplinary Studies at Miami University. She has not, however, identified evidence concerning the specific work performed by the various members of the faculty. In fact, she compares herself specifically only to Hays Cummins. She has not come close, therefore, to demonstrating that she performs, or has at relevant times performed, work that is equal to that performed by male colleagues.

Plaintiff relies, apparently, on the assumption that all full professors in a university department perform equal work on jobs requiring equal skill, effort, and responsibility. Her burden is not that easily satisfied, however. An Equal Pay Act plaintiff bears the burden of establishing equality of the work performed and the skill, effort, and responsibility required to perform it. Plaintiff has not carried that burden with regard to Hays Cummins or any other member of the faculty in her department.

With respect to Hays Cummins, the evidence of record reveals the following: he began teaching at the same time Plaintiff began; his salary has always been higher than Plaintiff's; he directs the Center for Science Discovery; his scholarship has been viewed very favorably by a former dean; he has taken two semesters of leave since joining the Miami University faculty. Plaintiff does not argue that her work and that of Hays Cummins are identical. She implicitly argues that they are equal, save with respect to the areas in which her requirements have been altered by virtue of the accommodations to which she and the University agreed. She has not introduced sufficient evidence concerning her own work or that of Professor Cummins to permit a comparison, however. For example, the record is devoid of evidence relating to the work Hays Cummins performs as director of the Center for Science Discovery or the work Plaintiff performs in connection with the Western Performance Group. While distinctions between the demands of that work are necessarily relevant to the claim Plaintiff asserts under the Equal Pay Act, she makes no effort to establish the equality of her work to that of the male professor to whom she compares herself. In the case from this circuit upon which Plaintiff relies most heavily, *Kovacevich,* 224 F.3d at 827, for example, the plaintiff presented evidence of comparability of work load, performance evaluations, prior experience, and other factors with potential impact upon compensation. Plaintiff has presented very little in the way of evidence of performance quality, work load, or credentials with respect to her own employment by Defendant and none with respect to the employment of Hays Cummins.

The Court concludes that Plaintiff has not established a *prima facie* claim under the Equal pay Act because she has not attempted to demonstrate equality of her work and the related factors bearing upon compensation and those of Hays Cummins, the sole male colleague to whom she compares herself. In short, her Equal Pay Act claim fails for want of a serious effort by Plaintiff to establish a *prima facie* case. Defendant's motion for summary judgment is well-taken with respect to the Equal Pay Act Claim.

### 2. Title VII Discrimination Claim

Plaintiff asserts a very similar claim under Title VII. In essence, her claim is that Defendant discriminated against her in the compensation terms of her employment on the basis of her sex.

■ In order to succeed in an action for disparate treatment employment discrimination based on race or sex, a plaintiff must demonstrate that the adverse employment decisions would not have been made "but for" her race or sex. *See Gutzwiller v. Fenik,* 860 F.2d 1317, 1325 (6th Cir.1988). A plaintiff can make this showing by presenting direct evidence or by inference, that is, by making a *prima facie* showing of discrimination. Plaintiff has not presented direct evidence of discrimination and must, therefore, prove her claim, if at all, on the basis of inference.

■ In order to prove a *prima facie* claim of discrimination in the compensation term of her employment, a Title VII plaintiff must identify evidence that tends to show, *inter alia,* that she is similarly situated in all material respects to the male employee to whose compensation she compares her own. *See Hollins v. Atlantic Co., Inc.,* 188 F.3d 652, 659 (6th Cir. 1999) (citing *Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir.1992)). The United States Court of Appeals for the Sixth Circuit has stated that in order to establish a *prima facie* case, a plaintiff must show that the employees to whom

she compares herself were similarly-situated in all relevant respects. *See Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994). The burden of proof with respect to the issue of comparability rests upon Plaintiff, who must "produce sufficient affirmative evidence to establish that the ... employees with whom she compares her treatment were 'similarly situated....'" *Mitchell,* 964 F.2d at 583.

■ As the Court observed in the section of this Memorandum and Order devoted to Plaintiff's Equal Pay Act claim, Plaintiff has not made a serious attempt at demonstrating that she is similarly situated in all relevant respects to Hays Cummins, the male colleague to whom she compares herself. For example, she has not introduced evidence concerning the bases for merit based pay increases, even though merit is plainly a factor in salary determinations. In order to prove that her sex, and not an inferior contribution to the University, caused the disparity between her pay and Hays Cummins', Plaintiff was required to identify some basis for concluding that her contribution[1] has been comparable to Professor Cummins'. She has not done so and, accordingly, has not demonstrated that she can prove that she is similarly situated to Professor Cummins. Her Title VII discrimination claim fails for that reason, and Defendant is entitled to summary judgment with respect to that claim.

### 3. The Rehabilitation Act Claim

Before turning to the evidence in support of Plaintiff's Rehabilitation Act claim, the Court must address a related issue raised by Defendant in its motion for summary judgment. Defendant suggests that the State of Ohio has not waived its Eleventh Amendment immunity for purposes of claims for money damages under the Rehabilitation Act of 1973. Defendant's position has been rejected on at least two recent occasions by the Court of Appeals and is incorrect as a statement of currently applicable law. *See Robinson v. Univ. of Akron School of Law,* 307 F.3d 409, 411 (6th Cir.2002); *Nihiser v. Ohio Environmental Protection Agency,* 269 F.3d 626, 628–29 (6th Cir.2001).

■ In connection with her Rehabilitation Act claim, Plaintiff alleges that Defendant discriminated against her in the compensation term of her employment on the basis of her handicap, lupus and related symptoms and syndromes. To succeed in her claim against Defendant, Plaintiff must satisfy the threshold requirement of establishing that she is a handicapped person as defined by the statute. A handicapped person is one who "has a physical or mental impairment which substantially limits one or more of such person's major life activities." 29 C.F.R. § 706(7)(B). The question of who is a handicapped individual under the Rehabilitation Act is best suited to a "'case-by-case determination' as courts assess the effects of various impairments upon varied individuals." *Forrisi v. Bowen,* 794 F.2d 931, 932 (4th Cir. 1986) (quoting *E.E. Black, ·Ltd. v. Marshall,* 497 F.Supp. 1088, 1100 (D.Hawai'i 1980)). The statutory language, which requires a substantial limitation of a major life activity, "emphasizes that the impairment must be a significant one." *Forrisi,* 794 F.2d at 933. "Major life activities" is defined in 29 C.F.R. § 1613.702(c) as "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."

---

1. The Court uses "contribution" as a shorthand reference to the criteria upon which annual salary increases are based at Miami University.

In arguing for summary judgment with respect to Plaintiff's Rehabilitation Act claim, Defendant contends that she has not identified a major life activity in which she is significantly limited by virtue of her medical conditions. In response, Plaintiff argues that lupus "along with the related syndromes such as fibromyalgia, Sjogren's and Raynaud's, affect all major aspects and activities of Plaintiff's life." Memorandum in opposition, p. 15. She does not argue that she is "significantly limited;" however, and her failure to identify evidence with regard to her specific limitations makes her *prima facie* claim very weak, if sufficient.

The Court observes, on the other hand, that Defendant has previously agreed to accommodations for Plaintiff's medical conditions, lending credence to Plaintiff's claim that she is handicapped and is viewed as handicapped by Defendant. Moreover, a decision of the Court of Appeals for the Fourth Circuit suggests that lupus may be a disability, although the defendant in that case apparently did not contest that the plaintiff was disabled. *See Tyndall v. National Education Centers, Inc. of California,* 31 F.3d 209, 212 (4th Cir.1994). While Plaintiff has not established that she is handicapped as a matter of law for Rehabilitation Act purposes, she may be able to establish the existence of a material fact regarding her coverage status under the Act.

Plaintiff's Rehabilitation Act claim is not that Defendant failed to accommodate her handicap. Rather, she asserts that Defendant engaged in impermissible discrimination in the compensation term of her employment on the basis of her handicap.

The Court first observes that Defendant did not know Plaintiff to be handicapped at the time of her hiring. Accordingly, any initial disparity in compensation was not attributable to animus based on her handicap.

The Court also notes that from 1991 until 1996, the gap between Plaintiff's salary and that of Hays Cummins was narrowing, indicating that Plaintiff was receiving greater incremental increases that was Mr. Cummins. She cannot establish that Defendant took adverse action against her on any basis during that period of time. Beginning in 1996 or 1997, the gap between Plaintiff's salary and that of Hays Cummins began to widen again. Professor Cummins has consistently received larger incremental salary increases from 1997 to 2002, with the exception of one adjustment in 2001 that was an attempt by the dean of Plaintiff's school to remedy a disparity he viewed as unwarranted.

Defendant observes that the statute of limitations applicable to claims under the Rehabilitation Act in Ohio is two years. *See James v. Upper Arlington City School Dist.,* 228 F.3d 764, 769 (6th Cir.2000), *cert. denied,* 532 U.S. 995, 121 S.Ct. 1655, 149 L.Ed.2d 637 (2001). On that basis, Defendant argues that Plaintiff's may only base her Rehabilitation Act claim upon alleged adverse actions that occurred on or after October 26, 1999, the date two years before Plaintiff initiated this action. Plaintiff correctly observes that earlier acts of discrimination may be actionable to the extent that Plaintiff can prove discrimination within the statutory period that is a continuation of early discrimination. *See, e.g., Equal Employment Opportunity Commission v. Penton Industrial Publishing Co., Inc.,* 851 F.2d 835, 838 (6th Cir. 1988). In other words, to the extent that Plaintiff can prove that Defendant has discriminated against her on the basis of her handicap when determining incremental salary increases during the two-year statute of limitations period, similar acts of discrimination in compensation outside the

statutory period may be actionable. *See id.*

Because Plaintiff bases her Rehabilitation Act claim on only the difference between her salary increases and those Defendant gave to Hays Cummins, the Court must examine the evidence identified by Plaintiff in order to determine whether she has introduced evidence of a disparity in treatment. As the Court has noted, Defendant has given Professor Cummins larger incremental salary increases nearly every time salaries have been reviewed over the past six years. Accordingly, Plaintiff can prove an adverse action to the extent that smaller salary increases are adverse actions. Defendant argues, however, that Plaintiff cannot demonstrate that her handicap is the sole reason for the alleged adverse actions. *See Doherty v. Southern College of Optometry*, 862 F.2d 570, 573 (6th Cir.1988), *cert. denied*, 493 U.S. 810, 110 S.Ct. 53, 107 L.Ed.2d 22 (1989).

Defendant notes that Plaintiff was away from the Miami University campus during many of the years preceding small salary increases. It argues that the small increases were prompted, at least in part, by Plaintiff's absence and consequent reduced contributions to the University. Defendant further contends that all of Plaintiff's increases, and all increases of others in her department, have been made on the basis of merit and contributions to the University.

Plaintiff has not introduced evidence that contradicts Defendant's assertion that absences from the University result in smaller salary increases than are given when a professor is more actively contributing to the University. Plaintiff notes that Professor Bill Green of her department received a larger raise as a percentage of salary after a period of leave than she received during and after her periods of leave, but she acknowledges that Professor Green was gone for a shorter period of time, in a different year, and the evidence demonstrates that his salary increase following his leave was smaller than the increases he usually enjoyed. Accordingly, the reference to Defendant's treatment of Professor Green following a leave lends no support to Plaintiff's claim and bolsters Defendant's argument significantly. Plaintiff has identified no other evidence contradicting Defendant's representation that periods of leave, particularly lengthy ones, generally result in smaller salary increases.

Having combed the record, the Court has found only one bit of evidence in support of Plaintiff's contention that her handicap was a basis for salary discrimination by Defendant. That bit of evidence comes from Plaintiff's own deposition testimony in which she discussed the accommodations Defendant had made for her and the fact that she believes that Defendant does not adequately account for those accommodations when determining her salary increases. *See* Plaintiff's Deposition, pp. 80–85. She has not identified any evidence from the decision-makers with respect to her salary that suggests that they based salary increase decisions on any disparity between her output or activities and those of her colleagues that resulted from Defendant's accommodations of her medical conditions. In other words, while Plaintiff clearly believes that she deserves more credit for doing all she is physically able to do for the University, even if that is less than some of her colleagues do, she has not identified evidence that tends to show that either her handicap or Defendant's accommodations of that handicap has affected her compensation in any fashion. She cannot; therefore, prove that her handicap was the sole basis for the adverse actions of which she complains, and Defen-

dant is entitled to summary judgment with respect to her claim under the Rehabilitation Act of 1973.

### D. *Retaliation*

Plaintiff's retaliation claim, as clarified in her memorandum in opposition to Defendant's motion for summary judgment, is based upon her complaints within the University about perceived sex discrimination and her charge of discrimination to the Equal Employment Opportunity Commission. Plaintiff made the complaints and filed the charge in 2000. She received salary increases in subsequent years that were smaller than those given to many of her male colleagues. She argues that the size of the increases is evidence of a connection between her activities and the alleged adverse actions.

In order to establish a *prima facie* case of retaliation in violation of an antidiscrimination statute, a plaintiff must demonstrate the following:

(1) that the plaintiff complained of discrimination or took some other action that is protected by the statute;

(2) that the plaintiff's employer was aware of the action;

(3) that the plaintiff's employer thereafter took adverse action against the plaintiff; and

(4) that a causal relationship between the protected action and the adverse action exists.

*See Canitia v. Yellow Freight System,* 903 F.2d 1064, 1066 (6th Cir.), *cert. denied,* 498 U.S. 984, 111 S.Ct. 516, 112 L.Ed.2d 528 (1990). Defendant tacitly concedes, at least for the sake of argument, that Plaintiff can establish the first three prongs of the *prima facie* case with respect to her internal complaints of discrimination and her charge of discrimination. Those events preceded the salary increase decisions of which Plaintiff complains. Her increases were smaller than the average

within her department, perhaps amounting to an adverse action. Defendant contends, however, that Plaintiff cannot establish a causal connection between her protected activities and the salary decisions.

Plaintiff offers, first, the temporal proximity between the events. She notes that the salary decisions followed her internal complaints and her charge of discrimination and that any efforts on the part of the dean of her department to remedy salary disparities in her favor ceased after those occurrences.

"[T]emporal proximity alone is insufficient to establish a causal connection for a retaliation claim." *Little v. BP Exploration & Oil Co.,* 265 F.3d 357, 363–64 (6th Cir.2001) (citing *Nguyen v. Cleveland,* 229 F.3d 559, 566 (6th Cir.2000)). Coupled with other evidence of retaliatory conduct, temporal proximity may be evidence of a causal connection. *See Little,* 265 F.3d at 364.

Having failed to identify other evidence, however, Plaintiff is left with her contention that the fact that one group of events, the alleged adverse actions, followed the other, her protected activities, suffices to establish a causal connection. That contention flies in the face of established law. *See Little, supra.* Accordingly, Plaintiff cannot establish a *prima facie* retaliation claim, and Defendant's motion for summary judgment is well-taken as regards that claim.

### E. *Conclusion*

For those reasons, Defendant's motion for summary judgment (Doc. 13) is hereby **GRANTED** in its entirety, and this action is **CLOSED**.

**IT IS SO ORDERED.**